### ANDERSON LEONARD v. THE STATE.

#### No. 167.   Decided November 17, 1909.

**1.—Burglary—Recent Possession—Charge of Court.**

As a prerequisite to a charge applicable to the possession and explanation of such possession of recently stolen property, the fact of possession must be shown, and where this has not been done such a charge is upon the weight of the evidence.

**2.—Same—Charge of Court—Possession Unexplained and Exclusive.**

Where, upon trial for burglary, the evidence failed to show that the defendant was in personal possession of the alleged stolen property, it was error to charge the jury with reference to possession of recently stolen property without further charging that, to constitute possession under this character of case, it must be recent, personal and exclusive.

Appeal from the District Court of Fayette. Tried below before the Hon. L. W. Moore.

Appeal from a conviction of burglary; penalty, two years imprisonment in the penitentiary.

The opinion states the case.

*E. H. Moss, for appellant.*—Upon question of assuming in the charge of the court the fact of possession of recently stolen property and explanation thereof: White v. State, 13 Texas, 133; Webb v. State, 8 Texas Crim. App., 115; Baker v. State, 6 Texas Crim. App., 344; Jernigan v. State, 10 Texas Crim. App., 546; Spillman v. State, 38 Texas Crim. Rep., 607, 44 S. W. Rep., 149; Pollard v. State, 33 Texas Crim. Rep., 197, 26 S. W. Rep., 70; Stockman v. State, 24 Texas Crim. App., 387, 6 S. W. Rep., 298; Schwartz v. State, 53 Texas Crim. Rep., 449, 111 S. W. Rep., 399.

Upon question of the court's failure to charge on recent possession that the same must be personal and exclusive: Field v. State, 24 Texas Crim. App., 422, 6 S. W. Rep., 200; Jackson v. State, 28 Texas Crim. App., 143, 12 S. W. Rep., 701.

*F. J. McCord,* Assistant Attorney-General, for the State.

DAVIDSON, PRESIDING JUDGE.—The indictment charges in separate counts a night and day burglary. The alleged owners were Ferd. Kneip, Jr., and William Kneip. The court charged the jury with reference to possession of stolen property recently after it was taken and a reasonable explanation of such possession. As far as

the charge went it followed the form set out in Wheeler v. State, 34 Texas Crim. Rep., 350.

There were two serious objections urged to the conviction: First, there was no evidence in the case authorizing a charge on possession of recently stolen property accompanied by an explanation. And, second, under the facts of the case and where the State is relying upon possession of property recently stolen as the main fact to prove burglary, then it was fatal to the conviction that the court failed to charge the jury that to warrant an inference of guilt of burglary from the circumstances of possession of recently stolen property, such possession must be personal, exclusive, unexplained and involve a distinct and conscious assertion of possession of the property by the accused. We have read the statement of facts carefully and have failed to find any evidence in the case that puts appellant in personal possession of the property, if in fact the property was taken. The owners testify that they had been missing some cotton from their gin and as they were buying up small remnants of cotton they decided to place some slips of paper in among 400 pounds of cotton on the upper floor of their gin. This was on the 24th of December; they were not back at the gin until the thirtieth. On the thirty-first appellant's little son about nine or ten years of age proposed to sell to the owners of the gin a small lot of seed cotton. They testified that this little boy was named Dykes Leonard. They took the cotton upstairs, the little boy remaining downstairs, and emptied it on the floor from the sacks and some of their slips of paper were found in the cotton and from this the inference is to be deduced or reached that the gin house was burglarized. At this point it may be well enough to state that there was no evidence in the case that the house was broken, nor did the owners of the gin house undertake to swear that the house was broken at any point. So it will be seen that the main fact relied upon to show the burglary was that the slips of paper were found in the cotton that they bought from the little boy, Dykes Leonard, or Johnnie Leonard; or at least the cotton that they emptied from the sacks that he brought there. Neither of these witnesses undertook to swear that appellant ever had possession of the cotton and expressly so state. There was one door by which a party could enter the gin house without breaking, that door having been blown down. That door was upstairs. This would have to be reached by climbing a ladder or getting up in some way to it, but there was no evidence introduced showing or tending to show that if this cotton was taken from the gin, it was taken in that manner. So, as before stated, the State relied upon the fact that the pieces of marked paper were in the sacks of cotton brought to their gin and sold to them by the boy, Dykes Leonard. The State introduced a son of appellant whose name was Johnnie, but commonly called "Coon" Leonard. His testimony was, in substance, that about the last of the year he went to

the gin in question to sell some cotton which his father instructed him to take there and sell. He says that his father gave him no instructions as to what to do with the money, but simply told him to take the cotton down to the gin and sell it. He said that one sack of the cotton belonged to himself and the other the boys could have. This witness said he never saw any tags in the cotton either at that time or since that time. He further testified, speaking of himself and younger brother, that they picked some cotton during the holidays and this was the cotton that was carried to the gin. That his father had nothing to do with the picking of the cotton; that he took this cotton down to Kneip's gin, but his father was not with him and had nothing to do with the taking of the cotton to the gin; that before taking of the cotton to the gin he saw Mr. Kneip and asked him if he wanted to buy some cotton that he had, and being answered in the affirmative, he took it to the gin. This conversation was the day before he sold the cotton. He says, "We picked the cotton we sold him down in the field." He says, "After we got to the gin Mr. Kneip told us to go and tell father to come." This cotton was emptied upstairs and this witness did not go up there to see where they put the cotton as he never got off of the horse; that the people at the gin did not show him the tags they said they found in the cotton at that time or at any time, nor did they say anything about seeing the tags in the cotton; that the cotton was kept in the smokehouse at home and he did not know whether his father knew that or not. Appellant testified in his own behalf that he had some cotton left in his field and told his boys they could have it if they would pick it; that some of this cotton was unpicked at the time he was arrested and placed in jail; that his little boys asked him if they would pick the cotton in the field, would he give it to them and he answered them in the affirmative and they picked some of the cotton before he was arrested and what became of the other he did not know; that he told his little boys to sell the cotton and they could have the money; that on the day in question when he got home from Roundtop his little son came to him and told him that Mr. Kneip wanted him up at the gin. He says, he did not claim the cotton at that time, nor did he tell the boys to take the cotton to the gin for him, but told them to take it to the gin, and that they could have the money that they got for it; that he didn't know whether he told them to take it to the gin and sell it or not, but just told them they could have the cotton. He says, "When Mr. Kneip showed me the cotton with the tags in it, I told him I didn't see how they got in there as I couldn't understand how they would get in there;" that he was sure his cotton would have no tags in it. He denies going into the gin or getting the cotton out of the gin. The Kneips testified that when they sent for appellant and he reached the gin they asked him how came those slips of paper in the cotton and he claimed

that he did not know; that one of the sacks of cotton belonged to the boys and one to his mother. This the appellant denies. This is practically the case on the facts.

We are of opinion that the charge in regard to possession of recently stolen property, if called for by the facts, was deficient in not charging that possession must be recent, personal and exclusive. Having given the charge on this subject, under the circumstances detailed above, it was clearly incumbent upon the court to have charged further that in order to constitute possession under this character of case, as an evidence of guilty possession it must be recent, personal and exclusive. As a prerequisite to a charge applicable to the possession and explanation of such possession of recently stolen property, the fact of possession must be shown, and where this has not been done, it is an assumption of a fact by the court against the record and a charge upon the weight of the evidence, to give such charge, because it is the assumption of a fact in the case not proved, and turns the guilt upon such assumed unproved fact.

The judgment is reversed and the cause is remanded.

*Reversed and remanded.*